EVANGELINE SEASE, Respondent, *v.* CENTRAL GREYHOUND LINES, INC., OF NEW YORK, Appellant.

Third Department, December 30, 1952.

*Donald W. Kramer* for appellant.

*Charles J. Bellew* for respondent.

HALPERN, J.  Under the circumstances of this case, we believe that it was proper to serve the defendant by mail pursuant to the provisions of section 52 of the Vehicle and Traffic Law.

The plaintiff was allegedly injured on August 1, 1948, as the result of a collision between an automobile in which she was a passenger and an omnibus owned and operated by the defendant, on a State highway in Chemung County.

The plaintiff did not retain an attorney until May of 1951, about three months before the Statute of Limitations would have run against her cause of action.  The plaintiff's attorney in an effort to ascertain the name and address of the owner of the omnibus involved in the collision, first procured a copy of the report of the accident from the office of the Sheriff of Chemung County.  This report showed that the omnibus had carried license plates bearing number 54–505.  The report also showed the owner as " Lee Plate," and the owner's address as " 600 Hamilton Avenue, Cleveland, Ohio."  The meaning of this notation is not clear but it apparently meant that the Cleveland address had been taken from the registration certificate issued with the license plates bearing number 54–505.

At the request of the plaintiff's attorney, the State Police sent a teletype message to the Bureau of Motor Vehicles to ascertain the name and address of the owner of the vehicle for which license plates number 54–505 had been issued for the year 1948.  The bureau replied by teletype message that " Central Greyhound Lines, Inc., 2600 Hamilton Avenue, Cleveland, Ohio " was the owner.

Plaintiff's attorney had also made inquiries of the assistant manager of the Binghamton office of the defendant and had been told that the defendant's correct name and address was " Central Greyhound Lines Inc., of New York with offices at 2600 Hamilton Avenue, Cleveland, Ohio."

The plaintiff's attorney concluded from the information received from the Bureau of Motor Vehicles and from the defendant's assistant manager that the defendant was a foreign corporation organized under the laws of Ohio and maintaining its principal place of business at 2600 Hamilton Avenue in Cleveland, Ohio.  He drafted the complaint accordingly.

The summons and complaint were served by mail upon the Secretary of State on July 27, 1951, and copies were sent to the defendant at the Ohio address, with a notice of service on the Secretary of State, by registered mail with return receipt requested, all in accordance with section 52 of the Vehicle and Traffic Law.  The summons and complaint were received by

the defendant on July 30, 1951, and were forwarded by it to its local counsel in Binghamton, New York, who received the papers on August 2, 1951, just after the three-year period of limitation applicable to the plaintiff's cause of action had expired. The defendant's attorneys moved to vacate the service upon the ground that the defendant was, in fact, a domestic corporation with its principal office in Syracuse, New York, and that it was not subject to service under section 52 of the Vehicle and Traffic Law.

The defendant admits that, in its application for registration of the bus pursuant to section 11 of the Vehicle and Traffic Law, in 1948, it certified that both its residence and business address were " 2600 Hamilton Avenue, Cleveland, Ohio ". As its counsel explained upon the oral argument, this was done to serve the defendant's business convenience. The defendant's legal and financial affairs were handled in Cleveland, the regional headquarters of the Greyhound system, of which the defendant was a part; the defendant preferred to have all matters growing out of the registration of its buses handled directly in Cleveland; for that reason, the buses were registered from the Cleveland address.

The Central Greyhound Lines, Inc., of New York, the defendant, is " Controlled through ownership of its entire capital stock, by The Greyhound Corporation (a Delaware corporation) " (2 Report of N. Y. State Public Service Comm., 1949, p. 545). We may properly take judicial notice of this fact, appearing as a matter of undisputed and indisputable public record, for the purpose of upholding the order appealed from (cf. *People* v. *Flack,* 216 N. Y. 123, 130; 6 Carmody on New York Practice, § 316, and Civ. Prac. Act, § 344-a).

Incidentally, it may be noted that in the defendant's affidavits there is no denial of the statement, alleged by the plaintiff's attorney to have been made to him by the assistant manager of the defendant's Binghamton office, that the office of the defendant was at 2600 Hamilton Avenue, Cleveland, Ohio, nor is there any repudiation of the assistant manager's authority to make this statement.

It is difficult to understand, in view of these facts, what basis there is for any complaint by the defendant that it was treated as a nonresident and was accordingly served as a nonresident under section 52 of the Vehicle and Traffic Law.

The defendant apparently wished to have all litigation growing out of its bus operations handled in the first instance in the office of the Greyhound system in Cleveland; apparently,

the buses of the New York subsidiary were registered from the Cleveland address for the very purpose of assuring that immediate firsthand information about any lawsuits would go to the regional office and the regional office could then forward the papers to the appropriate local office.

Subdivision 1 of section 11 of the Vehicle and Traffic Law provides that every motor vehicle must be registered in the name of its owner who must give his " residence, including county and business address ". This, of course, means that he must give his true residence. He may not give as his residence, an address which is not that of his residence but which is only an office address adopted for business convenience. Registration in compliance with the statute is required " for the purpose of facilitating identification of an owner by the police and the public, fastening responsibility for injuries and requiring evidence of ability to respond in damages to injured persons." (*Shuba* v. *Greendonner,* 271 N. Y. 189, 193.) The residence address the owner gives in registering his vehicle must be deemed to be his residence for the purpose of administering the Vehicle and Traffic Law; the information so given may be relied upon by the public authorities and by any member of the public who may be affected by the operation of the vehicle upon the public highways.

In this case, the defendant in registering its fleet of buses under section 11 gave the Cleveland address both as its residence and its place of business. Having elected to treat itself as a resident of Ohio for the purpose of registration under section 11 the defendant must be deemed to be a resident of Ohio for the purpose of determining whether service may be made upon it as a nonresident under section 52 of the Vehicle and Traffic Law. The term " residence " must be given the same meaning in both sections.

Since the purpose of registration is ready identification of the owner of the vehicle, including the ready determination of whether he is a resident or nonresident, one who registers as a nonresident will not be allowed to assert that he is not a nonresident, for the purpose of challenging the validity of the service of process upon him under section 52. This conclusion may be rested either upon considerations of public policy or upon equitable estoppel. " Whether we call it an estoppel or whether we decide that the action of the Legislature in regulating the use of such vehicles in this State establishes our public policy, makes no difference in the final result." (*Shuba* v. *Greendonner, supra,* p. 193.)

If, as the defendant contends at one point in its argument, a domestic corporation cannot for any purpose be considered a resident of any State other than the State of its incorporation, the defendant made a false and misleading statement in violation of section 11 of the Vehicle and Traffic Law when it gave Cleveland, Ohio, as its residence. A violation of this nature, having the effect of subverting the policy of the statute violated, gives rise to an estoppel, barring the assertion that the facts are not in accordance with the representations made (*Shuba* v. *Greendonner, supra*; *Reese* v. *Reamore*, 292 N. Y. 292). In this respect, this case is analogous to the *Shuba* case. It was there held that a person who registered an automobile in his name as owner when, in fact, someone else was the owner, was estopped from asserting that he was not the owner and it was held that he was liable under section 59 of the Vehicle and Traffic Law *as if* he were the owner. Similarly here, the defendant having certified that it was a nonresident in registering the bus, is estopped from asserting that in fact it was not a nonresident and it is further estopped from making the assertion here under consideration that, as a domestic corporation, it could not legally be a nonresident.

What the court said in the *Shuba* case (*supra,* p. 194) may be applied with appropriate changes of language to the defendant in this case: " To permit the respondent to relieve himself of liability [to invalidate service under section 52] by proving that he was not in fact the owner of the automobile [that he was not in fact a nonresident] and thereby establish his illegal and fraudulent act in procuring its registration in his own name [at an address outside the State which it falsely represented to be its residence] would be against public policy and would encourage fraudulent and illegal deceptions on the State in procuring the registration of automobiles in the names of persons who were not the owners thereof [at addresses which were not the true residences of the owners], directly in violation of the statute."

The statement of the Court of Appeals in the *Reese* case (*supra,* pp. 296, 297) is also directly in point: " one who has deliberately violated the laws which require accurate identification of the owners of motor vehicles operating on the highways through the use of number plates and a system of registration may not avoid liability for the negligent operation of vehicles registered in their names or identified by their license plates by denying the truth of their false representations of ownership deliberately made either by false registration or

by illegal use of their plates. * * * Any other rule would be against public policy, would encourage fraudulent and illegal deceptions on those engaged in enforcing the traffic laws of the State and deprive the public of the protection which these laws are intended to extend to those using the public highways."

The defendant makes much of the fact that its corporate name contains the words " of New York " and it argues that this gave notice that it was a domestic corporation and that as such it could not have any residence other than New York. From this it argues that the plaintiff was not justified in relying upon the statement in its registration that its residence was in Ohio. This argument is without merit. Ready identification being the purpose of registration, the plaintiff had the right to rely upon the information given in the registration and to disregard any other leads or clues to the correct name and address of the defendant. Furthermore, the premise of the defendant's argument is unsound. The presence of the words " of New York " in the name of a corporation does not necessarily indicate that New York is the State of incorporation. There is no statute in New York or in Ohio or for that matter, so far as a quick survey has disclosed, in any other State, which forbids the use in a corporate name of the name of a State other than the State in which the incorporation took place (see Martindale-Hubbell Law Digests, heading " Corporations ", subheading " Name "; see, also, Uniform Business Corporation Act, § 4; 18 C. J. S., Corporations, § 167). It is common knowledge that the names of many corporations contain geographical references which are inconsistent with the names of the States of their incorporation. A glance at Moody's Industrials, 1952, turns up, as examples, " Standard Oil Company of New York ", incorporated in the State of Delaware (p. 2071) and " Standard Oil Company of California ", incorporated in the State of Delaware (p. 1724).

In any event, whether the plaintiff was justified in relying upon the defendant's certification that its residence was in Ohio is immaterial, if, in fact, the plaintiff did rely upon the certification. " Contributory negligence " on the part of the person who is misled is not a defense against a charge of intentionally making misleading statements (*Angerosa* v. *White Co.*, 248 App. Div. 425, affd. 275 N. Y. 524; *Wilcox* v. *Amer. Tel. & Tel. Co.*, 176 N. Y. 115).

The affidavits show beyond dispute that the plaintiff relied upon the defendant's statement to her injury. Because of the defendant's statement, the plaintiff relied upon the sufficiency

of service under section 52 and refrained from making service within the State of New York prior to the running of the Statute of Limitations.

While it is thus clear that there is ample basis in this case for finding actual reliance by the plaintiff and for invoking the conventional doctrine of estoppel, the validity of the service may be upheld in this case upon a broader ground. As the Court of Appeals pointed out in the *Shuba* case (*supra*), the doctrine here involved is really one of public policy; when the word "estoppel" is used to describe it, the word is used in a special sense. The doctrine does not require proof of specific reliance by the plaintiff, such as is required in an ordinary case of estoppel. The doctrine is based rather on the fact that the statutory policy would be defeated if the defendant were allowed to show that the facts were different from those to which he had certified in response to the statutory mandate. It is a "public estoppel" growing out of the violation of a public statute designed to achieve certain public ends. Thus, for example, in the *Shuba* case, the injured person could not show that he had relied upon the fact that the son's car had been registered in the father's name; nevertheless, he was allowed to hold the father liable as if he were the true owner, because he had assumed that position in making the statutory registration. See, also, the national bank cases, in which it is held that one who gives a promissory note to a national bank is estopped to set up a private agreement with the bank's officers that he will not be held liable on the note, without any showing that anyone had relied to his injury upon the presence of the note among the bank's assets. (*Deitrick* v. *Greaney,* 309 U. S. 190, 198–199; cf. *Bay Parkway Nat. Bank* v. *Shalom,* 270 N. Y. 172.)

As has been noted above, at one point in its argument the defendant argues that, as a domestic corporation, it could not have any legal residence other than the State of New York and that the plaintiff should have known this. However, at another point in its argument, the defendant asserts, somewhat inconsistently, that it had the right to adopt Cleveland, Ohio, as its residence for the purpose of registration under section 11 of the Vehicle and Traffic Law. I am inclined to think that this second argument is right and that for this particular statutory purpose a corporation may be a resident of a State other than the State of its incorporation. While the legal domicile of a corporation always remains in the State of its incorporation (13 Am. Jur., Corporations, § 147), it may for some pur-

poses be deemed a resident of another State. "Whether a corporation is to be considered a resident of a particular place, by virtue of doing business there, depends entirely upon the connection in which the question arises. Where the problem is one of statutory construction, it must be solved in the light of the purposes of the act." (13 Am. Jur., Corporations, § 148.) The term "residence" in section 52 of the Vehicle and Traffic Law is not synonymous with domicile. A person who is domiciled in New York State may nevertheless be a resident of another State within the meaning of section 52 (*Uslan* v. *Woronoff*, 173 Misc. 693, affd. 259 App. Div. 1093; see, also, Vehicle and Traffic Law, §§ 52-a, 51, subd. 1, 2d par.).

But taking this view is of no assistance to the defendant. If the defendant had the right to adopt Cleveland, Ohio, as its residence for the purpose of registration under section 11, it must also be regarded as a resident of Ohio for the purpose of section 52. On the other hand, if the defendant's first argument is accepted and it is held that its only lawful residence is in the State of New York, the defendant's statement in its registration application that it was a resident of Ohio was false and in violation of statute and, by reason of the statement, the defendant is estopped to deny that it is a nonresident, subject to service as such under section 52. It does not matter which horn of the dilemma the defendant chooses; upon seizing either horn, it is impaled upon the other.

The order appealed from should be affirmed, with costs.

COON, J. (dissenting). This is an appeal from an order denying the motion of the defendant, appearing specially, to set aside the service of a summons. Concededly the only service made was pursuant to section 52 of the Vehicle and Traffic Law, by mail upon the Secretary of State and by mail addressed to the defendant at 2600 Hamilton Avenue, Cleveland, Ohio. Section 52 of the Vehicle and Traffic Law provides only for service upon a nonresident of the State of New York, and is completely ineffective and unavailable for service upon a resident. It is also conceded that the defendant, Central Greyhound Lines, Inc., of New York, is and was at all times involved, a domestic corporation. No one disputes the well-established rule that both the residence and domicile of a corporation are within the State of its incorporation — in this case the State of New York — and this is irrespective of the States where it may do business. (*Douglass* v. *Phenix Ins. Co.*, 138 N. Y. 209, 220; *Schoen* v. *Board of Educ. of Cambridge Central School Dist.*, 274 App. Div. 682,

684.) Consequently, it is inescapable that the defendant has the same status as an individual resident of the State of New York, to whom section 52 of the Vehicle and Traffic Law would have no application whatever.

The manner of service of a summons upon a domestic corporation has been prescribed in mandatory terms in section 228 of the Civil Practice Act, which provides only for personal service within the State upon one of the officers or agents designated therein, or, in the case of certain corporations, including a transportation corporation, upon the Secretary of State, when he has been designated as the agent of the corporation for that purpose. Even the latter type of service must be made personally upon the Secretary of State or other proper officer in his office. (Stock Corporation Law, § 25.) In the present case none of these things were done, and therefore no jurisdiction was obtained, and as the matter is jurisdictional, no court has the power to qualify, suspend or waive the statutory provisions for the service of a summons without clearly attempting to invade the legislative field.

The only other manner of obtaining jurisdiction is by voluntary appearance or waiver of the manner of service. Here there is no claim of voluntary appearance, and there can be no claim of waiver, because defendant promptly appeared specially and moved to set aside the service.

The court below denied defendant's motion upon the ground of estoppel, holding, in substance, that because the plaintiff had made certain efforts to obtain information through agencies not connected with defendant in any manner and had been misadvised concerning some of them, and that an employee of the defendant in a local station had given the address of the defendant as 2600 Hamilton Avenue, Cleveland, Ohio, and that the summons had actually reached the proper officer of the defendant, that the defendant was estopped from questioning the manner of service. While I question if jurisdiction itself may be obtained by estoppel, it is unnecessary to pass upon that question, because there was no estoppel here. Certainly the defendant is not responsible for misinformation given to plaintiff by other agencies. If defendant is bound at all in a matter such as this by an employee in a local station, it is to be noted that he did not state that defendant was an Ohio corporation or that it was not a New York corporation. He merely gave an address. While a New York corporation must list and maintain its principal office within the State of New York (and this the defendant did in its certificate of incorpora-

tion) I know of no legal prohibition for its having an office and address for the convenience of its business in any State it may choose.

Aside from the fact that defendant's very name included the words " of New York ", defendant had filed its certificate of incorporation with the Secretary of State of the State of New York, where it was available to anyone, and therein it listed Syracuse, New York, as the location of its principal office. In its application for a license for the particular bus involved in this accident, filed with the Bureau of Motor Vehicles, it was clearly stated that defendant was incorporated in the State of New York. True, the same application listed its address as 2600 Hamilton Avenue, Cleveland, Ohio, but that created no presumption that it was an Ohio corporation. A corporation may have many offices, and for the convenience of its business may list any one of them as its address upon a motor vehicle application.

I find in this situation no evidence of a willful and intentional misleading of the plaintiff by the defendant with intent that the plaintiff act thereon to her detriment, or to the advantage of the defendant. It is well established that this is an essential element of the doctrine of estoppel. (*Seafire Inc.* v. *Ackerson,* 193 Misc. 965, 975, affd. 275 App. Div. 717, affd. 302 N. Y. 668; *Selzer* v. *Baker,* 295 N. Y. 145, 149; *Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N. Y. 285, 292.)

The fact that the summons ultimately reached the proper hands does not validate an otherwise improper service. This was decided as early as 1904 in *Eisenhofer* v. *New Yorker Zeitung Pub. & Print. Co.* (91 App. Div. 94). It is appropriate here that it was stated in that case (p. 95) that where the Legislature has decreed that jurisdiction can be obtained only in a certain way " that way must be followed to the exclusion of all others, and, unless it is, the service is ineffectual for any purpose."

The order should be reversed and the motion granted, without costs.

Foster, P. J., Heffernan and Brewster, JJ., concur with Halpern, J.; Coon, J., dissents, in an opinion.

Order affirmed, with $10 costs. [See *post,* p. 939.]